IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Osman Ozsusamlar, | ) Civil Action No.: 1:18-492-AMQ-SVH |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| B.M. Antonelli, Warden, | ) |
| | ) |
| Respondent. | ) |

**ANSWER AND MOTION TO DENY HABEAS PETITION**

COMES NOW the Respondent, by and through Beth Drake, United States Attorney for the District of South Carolina and the undersigned Assistant United States Attorney and moves the Court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and to deny Petitioner's Habeas Petition. The grounds for this motion are further explained in the following Memorandum in Support.

**MEMORANDUM IN SUPPORT**

**I.     PARTIES**

At the time the Petitioner received the incident report referenced in this petition, he was housed at MDC Brooklyn. *[ECF No. 1-1, at 1, Incident Report #1601577]*. In May 2017, the Petitioner was transferred to the Federal Correctional Institution (FCI) Williamsburg in Salters, South Carolina, where he was incarcerated at the time he filed this petition. *[Exhibit #1, Inmate History]*. He has since transferred to the United States Penitentiary (USP) in Pollock, Louisiana. *[Id.]* He is serving a 188-month term of incarceration and 3 years supervised release imposed by the United States District Court for the Southern District of New York, for Conspiracy to Commit Murder for Hire; Murder for Hire, and Conspiracy to Commit Extortion in violation of 18 U.S.C.

§ 1958, §1958, and §1951 respectively. *[Exhibit #2, Public Information Inmate Data as of 03-05-2018]*. The Petitioner's projected date of release is July 4, 2019, via Good Conduct Time Release. *[Id.]*

The only proper Respondent in a habeas petition is the "person having custody of the person detained." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). In challenges to physical confinement, the proper respondent is the Warden of the facility where the petitioner is confined, "not the Attorney General or some other remote supervisory official." Id., at 435. The proper Respondent is the one who has physical control over the person detained, with the power to produce the body of such party before the court or judge. Id., at 434-35. At the time the Petitioner filed this habeas, he named B.M. Antonelli, Warden at FCI Williamsburg, where he was currently incarcerated. *[ECF No. 1]*. Thus, he named the proper Respondent even though he has since transferred to another institution.

The Petitioner, inmate Osman Ozsusamlar, Federal Register Number 53271-054, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging an administrative disciplinary action he received while incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York. *[ECF No. 1]*. The Petitioner alleges the Disciplinary Hearing Officer (DHO) had no jurisdiction to impose sanctions. *[Id., at 7]*.

**II.     SUBJECT MATTER JURISDICTION**

A petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. See United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (citing In re Vial, 115 F.3d 1192, 1194 n. 5 (4th Cir. 1997) (en banc)). Specifically, a petition for writ of habeas corpus under 28 U.S.C. § 2241 has been resorted to only in limited

situations—such as actions challenging the administration of parole, Doganiere v. United States, 914 F.2d 165, 169-70 (9th Cir. 1990); computation of good time or jail time credits, McClain v. United States Bureau of Prisons, 9 F.3d 503, 504-505 (6th Cir. 1993); prison disciplinary actions, United States v. Harris, 12 F.3d 735, 736 (7th Cir. 1994); or imprisonment beyond the expiration of a sentence, Atehortua v. Kindt, 951 F.2d 126, 129-30 (7th Cir. 1991). The Court has subject matter jurisdiction over the Petitioner's challenge to a disciplinary action wherein good conduct time was taken as this sanction impacts the duration of his sentence.

### III.  ADMINISTRATIVE REMEDIES

Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. See e.g. Kurfees v. I.N.S., 275 F.3d 332, 336 (4th Cir. 2001); Brown v. Smith, 828 F.2d 1493, 1495 (10th Cir. 1987) (must exhaust administrative challenge to disciplinary action prior to filing habeas petition). A habeas petition is not ripe until administrative remedies have been exhausted. United States v. Woods, 888 F.2d 653, 653 (10th Cir. 1989). Failure to exhaust may only be excused upon a showing of cause and prejudice. Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir. 2001) (cited with approval in McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004)). Any arguments not advanced to each step of the administrative appeal are procedurally defaulted. See e.g. Moffat v. Broyles, 288 F.3d 978, 981-82 (7th Cir. 2002).

The Supreme Court reaffirmed this concept, noting that "[i]n practical terms, the law of habeas . . . requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). If remedies are no longer available because the prisoner failed to comply with the deadline, then those remedies are technically exhausted (because they are no longer available) but this does not automatically

entitle a habeas petitioner to litigate their claims in federal court. Id. "[I]f the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." Id. Moreover, where a habeas petition is brought pursuant to § 2241, some courts have held this exhaustion requirement to be jurisdictional. See Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992); Hegney v. Holder, 177 F. App'x 901, 903 (11th Cir. 2006).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. Jones v. Bock, 549 U.S. 199, 204 (2007). It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. Jones, 549 U.S. at 204; Woodford, 548 U.S. at 94-95.

The Fourth Circuit follows the well-established rule that a federal prisoner bringing a claim under 28 U.S.C. § 2241 must nevertheless exhaust administrative remedies before seeking review in federal court. See McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.") (citing Carmona, 243 F.3d at 634); Timms v. Johns, 627 F.3d 525, 530-33 (4th Cir. 2010) (requiring exhaustion in a § 2241 matter); Miller v. Clark, 958 F.2d 368, 1992 WL 48031, at *2 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); Failure to exhaust may be excused only upon a showing of cause and prejudice. McClung, 90 F. App'x, at 444 (citing Carmona, 243 F.3d at 634-35).

The Courts in South Carolina also recognize that "although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their

administrative remedies before seeking habeas review under § 2241." Taylor v. Warden, Satellite Prison Camp at Edgefield, South Carolina, No. 2:16-01826-RBH, 2017 WL 359497, at * 2 (D.S.C. Jan. 25, 2017); Henderson v. Warden, Edgefield Satellite Prison Camp, No. 2:09-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the BOP before filing an action pursuant to § 2241."); see also Warren v. United States, No. 3:10-1245-MBS-JRM, 2011 WL 4435671, at * 2 (D.S.C. June 29, 2011) (citing Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999)).

The BOP has a three-tiered formal administrative grievance process and an informal resolution process. See 28 C.F.R. §§ 542.10 et seq. In the formal process, an inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the Warden within 20 calendar days after the date upon which the basis for the request occurred. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. Id. If dissatisfied with the response, the inmate may appeal to the Regional Director within 20 days of the date of the Warden's response. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel within 30 days of the Regional Director's response. Id. Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a). Thus, a claim has not been administratively exhausted until it has been filed with the General Counsel.

If the administrative remedy request or appeal involves a finding by a DHO, the inmate may appeal the decision directly to the appropriate Regional Office, and then to the Central Office. See 28 C.F.R. § 542.14(d)(2). An inmate that is challenging a disciplinary hearing decision must

file his administrative remedy within twenty days of the decision. If a remedy has been "rejected," it indicates that the inmate has failed to follow the appropriate procedures, and that the remedy has been returned in accordance with 28 C.F.R. § 542.17(a).

A review of the administrative remedies attached by the Petitioner to his petition reveals he has failed to exhaust his administrative remedies under the Administrative Remedy process established by the BOP on the issue set forth in his petition. *[ECF No. 1-1, at 12-23; Exhibit #3, Declaration of Amy Williams, Attachment A, Administrative Remedy Generalized Retrieval]*. Specifically, SENTRY reflects that as of April 10, 2018, the Petitioner has filed five sets of Administrative Remedies, namely 458267, 572813, 689736, 702420, and 918654, challenging the May 31, 2007, disciplinary proceeding (concerning the May 5, 2007, Incident Report). *[Exhibit #3, Attachment A]*. A review of Attachment A, pp. 002, 004, 005, 009, 010, 011, and 014 reveals that, of the eighteen administrative remedies submitted by Petitioner to challenge the May 31, 2007, disciplinary proceeding, all of them were rejected except for one. *[Id.]*

SENTRY shows the only administrative appeal that was accepted and denied on this issue is 458267-R4. *[Exhibit #3, Attachment A]*. This appeal was accepted by the Northeast Regional Office on November 5, 2007, and denied December 5, 2007. *[Id.]* Pursuant to the BOP's Records and Information Disposal Schedule System (RIDS), the BOP is only required to maintain three years' worth of prior administrative remedies. *[Exhibit #3]*. For that reason, Respondent is unable to provide the court with copies of 458267-R4 and the Northeast Regional Office's response denying the same. *[Id.]* The Petitioner failed to appeal the denial of the Regional-level Appeal 458267-R4 to the BOP's Central Office and, thus, failed to exhaust his administrative remedies with regard to his challenge to the May 31, 2007, disciplinary proceeding. *[Id., Attachment A]*.

In the Petitioner's most recent attempt to pursue his administrative remedies with regard to the May 31, 2007, disciplinary proceeding (Administrative Remedy 918654), the Petitioner was rejected at all three levels of the BOP administrative remedy program based on untimeliness. *[Id.; ECF No. 1-1, p. 12, 19, & 21]*. Generally speaking, an inmate has 20 calendar days from the date of the incident (within 20 calendar days from the date of the receipt of the DHO report) in which to file an appeal. See 28 C.F.R. § 542.14 (a). If however, an inmate can demonstrate a valid reason for the delay, the appeal can still be accepted. See 28 C.F.R. § 542.14 (b). The Petitioner was given multiple opportunities to submit staff verification demonstrating that he had a valid reason for the delay, and he failed to do so. *[Exhibit #3, Attachment A]*.

A review of the Petitioner's administrative remedy history indicates he has filed or attempted to file 145 administrative remedies since he has been in the BOP. *[Id.]* Thus, it is obvious the Petitioner is clearly familiar with the administrative remedy process. Based on the above, the Petitioner has not exhausted his administrative remedies in regard to his petition, and such petition is subject to dismissal, and should be dismissed.

**IV.     RESPONDENT'S STATEMENT OF THE CASE**

On May 22, 2007, it was determined that on May 9, 2007, the Petitioner made a threat to another person. *[Exhibit #4, Incident Report #1601577, Part I, § 11]*. Specifically, in a letter addressed to Judge Peter K. Leisure the Petitioner made the following statement: "I not write any more it not doing any good [sic]. My appeal come back. I get honest people then. I have friends now who are going to get information on all of you and get even for me. May 13 is coming soon." *[Id.]* Based on these facts the Petitioner is being charged with *Threatening Another Person*, Code 203. *[Id.]*

7

On May 22, 2007, at approximately 9:00 a.m., Special Investigations Section (SIS) Lieutenant F. Martinez prepared incident report #1601577 charging the Petitioner with *Threaten Another Person* in violation of Code 203.  *[Id., Part I, §§ 9-10, 12-13]*.  The incident report was delivered to the Petitioner the same day as it was written, at approximately 2:10 p.m.  *[Id., §§ 14-16]*.  The incident report provided the Petitioner with a description of the incident and the prohibited act with which he was being charged.  *[Id., §§ 9-11]*.  The matter was referred to a Lieutenant for investigation on this same day.  *[Exhibit #4, Part III]*.  The Petitioner was advised of his rights, which he stated he understood, and made a statement.  *[Id., §§ 23-25]*.  The Petitioner voluntarily provided the following statement, "Yes, I wrote the letter to the Judge K. Leisure because I was upset the Judge had not give [sic] me the sentence.  That why I wrote the letter."  *[Id., § 24]*.  The Petitioner did not request any witnesses in reference to this incident report.  *[Id., § 25]*.  The investigating officer, based on the information contained in section 11 of the incident report, found the Petitioner did commit the prohibited act and this report is correct as written by the reporting officer.  *[Id., § 26]*.  He referred the matter to the Unit Discipline Committee (UDC) for further disposition.  *[Id., § 27]*.

The UDC hearing was conducted on May 24, 2007.  *[Id., Part II, § 21]*.  The Petitioner was advised of his right to remain silent during the UDC hearing and/or during any stage of the disciplinary process, and informed that his silence could be used to draw an adverse inference against him.  *[Id., Part III, § 23]*.  The Petitioner stated, "My case was not going right, that's why I wrote the letter."  *[Id., Part II, § 17]*.  The UDC referred the charge to the DHO for further hearing, and noted that sanctions are unavailable on the UDC level.  *[Id., §§ 18B, 19]*.

On May 24, 2017, the Petitioner was given written notice of a hearing before the DHO as well as his rights at the DHO hearing. *[Exhibit #5, Notice of Discipline Hearing before the DHO; Exhibit #6, Inmate Rights at Discipline Hearing]*. On this same day, the Petitioner waived his rights to a staff representative and to call witnesses. *[Exhibit #5]*.

On May 31, 2007, a hearing before the DHO was conducted. *[Exhibit #7, Discipline Hearing Officer Report, § I. B]*. The Petitioner was present, again advised of his rights, and he stated that he understood his rights. *[Id., § V.]*. The Petitioner elected not to have a staff representative present at the hearing. *[Id., §§ II., III. C, V.]*. The Petitioner did not request any witnesses. *[Id., §§ III. C, V.]*. The Petitioner also made the following statement, "I have never had a problem with staff or inmates. The letter went to the Judge. Yes, this is my handwriting and signature. It also went to the attorney. I lost everything and was having problems. My friend went to get the transcript from the court. I never threatened anybody. Somebody else wrote it for me. My English is not that good. Somebody helped me, but I do not remember who helped me." *[Id., §§ III. B, V.]*. After consideration of all the evidence, the DHO found that the Petitioner committed the prohibited act of *Threaten Another with Bodily Harm* in violation of Code 203. *[Id., §§ IV., V.]*. The DHO considered the written incident report, investigation, a copy of handwritten letter addressed to Attorney Soloway and Judge Leisure dated May 7, 2007, which was signed by the Petitioner, and the Petitioner's statement and defense. *[Id., §§ III., D, V.]*. The DHO based his decision on the greater weight of the evidence and found the Petitioner committed the prohibited act as charged. *[Id., § V.]*. The DHO imposed sanctions including disallowance of 27 days of Good Conduct Time, 30 days disciplinary segregation, 175 days of loss visits, 175 days loss phones, and 175 days loss commissary (suspended pending 180 days clear conduct). *[Id.,*

*§ VI.]*.  The DHO prepared a written report detailing his decision, the evidence relied upon, and the reasons for the sanctions imposed.  *[Id., §§ V., VII.]*.  A copy of the DHO's decision was delivered to the Petitioner on June 5, 2017.  *[Id., § IX.]*.

## V.     LEGAL ANALYSIS

### A.     *Res Judicata* Bars Present Action

The Petitioner has already challenged the May 31, 2007, disciplinary proceeding in a habeas petition that resulted in a full and final decision.  More specifically, in 2013, the Petitioner filed a petition for habeas corpus against former Warden Paul Copenhaver, who was the Warden at the USP in Atwater, California.  See Osman Nuri Ozsusamlar v. Paul Copenhaver, Warden, et al., No. 1:13-00422-SAB-HC, 2014 WL 791480 (E.D. CA Feb. 24, 2014).  He challenged the May 31, 2007, disciplinary proceeding where he was found guilty of *Threatening Another With Bodily Harm* in violation of Code 203, and sanctioned to a loss of 27 days Good Conduct Time.  Id., at 1.  The Respondent argued that the Petitioner had not exhausted his administrative remedies.  Id., at 3.  Even though the court agreed with the Respondent that the Petitioner had not exhausted his administrative remedies, it also addressed the Petitioner's claims, and found them without merit.  Id.  On February 24, 2014, the court then found there was "some evidence" of guilt that the Petitioner violated Code 203, and the Petitioner's due process were not violated.  Id., at 4-6.  The petition was denied with prejudice.  Id., at. 7.

The Petitioner is now trying to re-litigate the same May 31, 2007, disciplinary proceeding. It is barred by the doctrine of *res judicata,* otherwise known as claim preclusion.  According to the Fourth Circuit, *res judicata* or claim preclusion bars a party trying to re-litigate a claim that was decided or could have been decided in an original suit.  Pueschel v. United States, 369 F.3d 345,

355 (4th Cir. 2004). It protects "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).

In December 2008, the District Court of South Carolina in the case Garrett v. Ozmint dismissed a habeas petition where an inmate was challenging his sentence computation on the grounds *res judicata*. No. 6:08-0399-HMH-WMC, 2008 WL 5244542 (D.S.C. Dec. 15, 2008). The court, citing the Fourth Circuit case Meekins v. United States Transportation Union, stated:

> A party invoking *res judicata* (or claim preclusion) must establish (1) that there was a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits . . . . The preclusive affect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for '[n]ot only does *res judicata* bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'

Garrett, 2008 WL 5244542, at *2-3 (Meekins v. United States Transportation Union, 946 F.2d 1054, 1057-58 (4th Cir. 1991)). The Garrett court went through each element of *res judicata* finding that there had been a final judgment on the merits concerning the identical factual allegations, the action concerned the same claims, and the parties were in privity with the parties in the previous action. 2008 WL 5244542, at *3.

Based on the above, there was clearly a final judgment on the merits in the previous habeas petition filed by the Petitioner. See Ozsusamlar, 2014 WL 791480. Both this habeas petition and the prior habeas petition contained identical factual allegations arising out of the same transaction, i.e., the May 31, 2007, disciplinary proceeding. Also, the Respondent in the prior habeas petition is in privity with the Respondent in the instant action. "To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he

represents precisely the same legal right in respect to the subject matter involved." Martin v. American Bancorporation Retirement Plan, 407 F.3d 643, 651 (quoting Jones v. S.E.C., 115 F.3d 1173, 1180 (4th Cir. 1997)).  The Respondent, Warden B.M. Antonelli, the Petitioner's custodian at the time he filed this petition, is in privity to the former Respondent, Warden Paul Copenhaver, the Petitioner's custodian at the time he filed his former petition, as they were both the Petitioner's custodian at the time he filed his petitions.  They both represent the same legal right in respect to the subject matter involved.  Thus, based upon the foregoing, the doctrine of *res judicata* bars the instant action.

## VI.     CONCLUSION

Based on the information provided above, the Petitioner's request for a writ of habeas corpus should be denied.

                                        Respectfully submitted,

                                        BETH DRAKE
                                        UNITED STATES ATTORNEY

By:     *s/Marshall Prince*
        MARSHALL PRINCE (#5617)
        Assistant United States Attorney
        1441 Main Street, Suite 500
        Columbia, South Carolina 29201
        Phone: (803) 929-3000

April 19, 2018

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that he has caused service of the attached **ANSWER AND MOTION TO DENY HABEAS PETITION** by a legal assistant employed in the Office of the United States Attorney for the District of South Carolina who is a person of such age and discretion as to be competent to serve papers.

That on April 19, 2018, my legal assistant served a copy of the foregoing document by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address, by depositing said envelope and contents in the United States Mail at U.S. Attorney's Office, 1441 Main Street, Suite 500, Columbia, SC 29201.

The undersigned also certifies that he has provided the Petitioner with copies of any unpublished decisions which are cited herein.

Osman Ozsusamlar
Reg. No. 53271-054
FCI Pollock-Pom
PO Box 4050
Pollock, LA 71467

*s/Marshall Prince*
MARSHALL PRINCE (#5617)
Assistant United States Attorney